**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| RYAN O'DELL,<br><br>Plaintiff,<br><br>v.<br><br>BIOHAVEN PHARMACEUTICAL HOLDING COMPANY LTD., VLAD CORIC, M.D., IRINA A. ANTONIJEVIC M.D. PH.D., GREGORY H. BAILEY, M.D., JOHN W. CHILDS, DOUGLAS GRAY ESQ., JULIA P. GREGORY, M.B.A., MICHAEL T. HEFFERNAN, ROBERT J. HUGIN, and KISHEN MEHTA,<br><br>Defendants. | : | Civil Action No. 22-cv-5834<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Biohaven Pharmaceutical Holding Company Ltd. ("Biohaven or the "Company") and the members Biohaven's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Biohaven by Pfizer Inc. ("Pfizer").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on July 1, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Bulldog (BVI) Ltd. ("Merger Sub"), a wholly-owned subsidiary of Pfizer, will merge with and into Biohaven with Biohaven surviving as a wholly-owned subsidiary of Pfizer, if the transaction occurs on or before December 30, 2022, or, if after December 30, 2022, Biohaven will merge with and into Merger Sub with Merger Sub as the surviving company (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 9, 2022 (the "Merger Agreement"), each Biohaven stockholder will receive $148.50 in cash (the "Merger Consideration") for each Biohaven share owned.

3.  As discussed below, Defendants have asked Biohaven's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview") in support of its fairness opinion.

4.  It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Biohaven's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Biohaven stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Vlad Coric, M.D. has served as a member of the Board since October 2015 and is the Chief Executive Officer of the Company and the Chairman of the Board.

11. Individual Defendant Irina A. Antonijevic M.D., Ph.D. has served as a member of the Board since May 1, 2022.

12. Individual Defendant Gregory H. Bailey, M.D. has served as a member of the Board since January 2014.

13. Individual Defendant John W. Childs has served as a member of the Board since January 2014.

14. Individual Defendant Douglas Gray Esq. is the Company's Corporate Secretary.

15. Individual Defendant Julia P. Gregory, M.B.A. has served as a member of the Board since August 2017.

16. Individual Defendant Michael T. Heffernan has served as a member of the Board since January 2020.

17. Individual Defendant Robert J. Hugin has served as a member of the Board since June 2020.

18. Individual Defendant Kishen Mehta has served as a member of the Board since June 2021.

19. Defendant Biohaven is a British Virgin Islands corporation and maintains its principal offices at 215 Church Street, New Haven, CT 06510. The Company's stock trades on the New York Stock Exchange under the symbol "BHVN."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

22. Biohaven, a biopharmaceutical company, develops products candidates targeting neurological and neuropsychiatric diseases, and rare disorders in the United States. It offers NURTEC ODT (rimegepant) for the acute treatment of migraine, as well as developing Rimegepant for preventive treatment of migraine; Zavegepant that is in phase III clinical trials for acute and preventive treatment of migraine, as well as respiratory complications and non-migraine studies; and BHV-3100 for non-migraine indications. The Company also offers Troriluzole for

spinocerebellar ataxia and obsessive compulsive disorders, as well as Alzheimer diseases; BHV-0223, a product for amyotrophic lateral sclerosis; BHV-5000/5500 for neuropsychiatric indications; and Verdiperstat, a product for multiple system atrophy and amyotrophic lateral sclerosis. Biohaven has a collaboration agreement with Cove to facilitate telemedicine evaluation for migraine sufferers. The Company was incorporated in 2013 and is headquartered in New Haven, Connecticut.

23. On May 10, 2022, the Company and Pfizer jointly announced the Proposed Transaction:

> NEW YORK & NEW HAVEN, CONN.--(BUSINESS WIRE)-- Pfizer Inc. (NYSE: PFE) and Biohaven Pharmaceutical Holding Company Ltd. (NYSE: BHVN) today announced that the companies have entered into a definitive agreement under which Pfizer will acquire Biohaven, the maker of NURTEC® ODT, an innovative dual-acting migraine therapy approved for both acute treatment and episodic prevention of migraine in adults.
>
> Under the terms of the agreement, Pfizer will acquire all outstanding shares of Biohaven not already owned by Pfizer for $148.50 per share in cash. Biohaven common shareholders, including Pfizer, will also receive 0.5 of a share of New Biohaven, a new publicly traded company that will retain Biohaven's non-CGRP development stage pipeline compounds, per Biohaven common share. The boards of directors of both Biohaven and Pfizer have unanimously approved the transaction. Pfizer will pay transaction consideration totaling approximately $11.6 billion in cash. Pfizer will also make payments at closing to settle Biohaven's third party debt and for the redemption of all outstanding shares of Biohaven's redeemable preferred stock. The $148.50 cash consideration represents a premium of approximately 33% to Biohaven's volume weighted average selling price of $111.70 over the three months prior to the announcement of the transaction.
>
> The proposed transaction includes the acquisition of Biohaven's calcitonin gene-related peptide (CGRP) programs including:
>
> - Rimegepant:

- Approved in the United States (U.S.) under the trade name, NURTEC® ODT, for both the acute treatment of migraine and preventive treatment of episodic migraine
- Approved in the European Union under the trade name, VYDURA®, for both acute treatment of migraine and prophylaxis of episodic migraine

- Zavegepant:
  - On track for a 2Q2022 acceptance (based on March 2022 submission) in the U.S. as an intranasal spray for the acute treatment of migraine and in development as an oral soft gel for chronic migraine prevention
- A portfolio of five pre-clinical CGRP assets

"Today's announcement builds on our legacy of delivering breakthroughs for patients living with complex pain disorders and diseases that disproportionately impact women," said Nick Lagunowich, Global President, Pfizer Internal Medicine. "NURTEC® ODT, which is already the #1 prescribed migraine medicine in its class in the United States, coupled with Biohaven's CGRP pipeline, offers hope for patients suffering from migraine worldwide. We believe Pfizer is uniquely positioned to help the portfolio reach its full potential given our leading scale and capabilities, including comprehensive field force engagement with Primary Care Physicians, specialists and health systems delivering the right information at the right time."

This agreement follows on the November 9, 2021 collaboration for the commercialization of rimegepant and zavegepant outside the United States, in connection with which Pfizer invested $350 million to acquire 2.6% of Biohaven's common stock at $173 per share.

"We are excited to announce Pfizer's proposed acquisition of Biohaven, recognizing the market leadership of NURTEC® ODT, our breakthrough all in one migraine therapy, and the untapped potential of our CGRP franchise," said Vlad Coric, MD, Chairman and Chief Executive Officer of Biohaven. "Pfizer's capabilities will accelerate our mission to deliver our migraine medicines to even more patients, while the new R&D company is well positioned to bring value to patients and shareholders by focusing on our innovative pipeline for neurological and other disorders. We believe this transaction represents significant future value creation for patients and our collective shareholders."

Following the closing, New Biohaven will continue to operate under the Biohaven name. New Biohaven will be led by Vlad Coric, MD,

> as Chairman and CEO, and include other members of the current management team of Biohaven. Biohaven common shareholders will receive, for each Biohaven share, 0.5 of a share of New Biohaven distributed via a *pro rata* distribution of SEC-registered, publicly listed shares. At distribution, New Biohaven will be capitalized with $275 million of cash. New Biohaven will also have the right to receive tiered royalties from Pfizer on any annual net sales of rimegepant and zavegepant in the United States in excess of $5.25 billion.
>
> Pfizer expects to finance the transaction with existing cash on hand.
>
> Pfizer's acquisition of Biohaven is subject to the completion of the New Biohaven spin-off transaction and other customary closing conditions, including receipt of regulatory approvals and approval by Biohaven's shareholders. The companies expect the transaction to close by early 2023.
>
> Due to the proposed transaction, Biohaven will not hold a conference call to discuss its first quarter 2022 financial results and will issue a press release and file a quarterly report on Form 10-Q with the U.S. Securities and Exchange Commission announcing those results on May 10, 2022.
>
> J.P. Morgan acted as Pfizer's financial advisor for the transaction with Ropes & Gray LLP acting as its legal advisor. Centerview Partners acted as Biohaven's financial advisor for the transaction with Sullivan & Cromwell LLP acting as its legal advisor.

* * *

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Biohaven's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B. <u>The Materially Incomplete and Misleading Proxy Statement</u>**

25. On July 1, 2022, Biohaven filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The

Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Biohaven management and relied upon by Centerview in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Centerview with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Biohaven management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Gross Profit, Operating Income, and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics ***and/or***

a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

32. With respect to Centerview's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

33. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the implied terminal value of Biohaven; (ii) the basis for the assuming a rate of free cash flow decline of 50% year over year; (iii) the inputs and assumptions underlying the use of the range of discount rates of 9.0% to 12.0%; (iv) the Company's weighted average cost of capital; and (v) the number of fully diluted shares of Company common stock outstanding as of May 6, 2022.

34. With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose the stock price targets published by research analysts and the analysts reviewed by Centerview.

35. With respect to Centerview's *Premia Paid Analysis*, the Proxy Statement fails to disclose the transactions selected and the premia paid for those transactions.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Biohaven within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Biohaven, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Biohaven, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Biohaven, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 8, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*

Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Tel: (212) 382-4620

Email: gloria@melwanichan.com

*Attorneys for Plaintiff*